**RYAN G. WELDON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT  59403**
**119 First Ave. North, Suite 300**
**Great Falls, MT  59403**
**Phone:  (406) 761-7715**
**FAX:  (406) 453-9973**
**E-mail:  Ryan.Weldon@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**SHAD JAMES HUSTON,**<br><br>Defendant. | **CR 14-46-GF-BMM**<br>**CR 15-35-GF-BMM**<br>**CR 15-42-GF-BMM**<br><br><br>**UNITED STATES'**<br>**CONSOLIDATED**<br>**SENTENCING**<br>**MEMORANDUM** |

The United States of America, by and through Ryan G. Weldon, Assistant U.S. Attorney for the District of Montana, provides the Court with a memorandum in aid of sentencing of the defendant.

1

## INTRODUCTION

Shad James Huston has pleaded guilty to Failure to File Currency Transaction Reports (CR-14-46-GF-BMM – 31 U.S.C. §§ 5324(a)(1), 522(b)), Bribery of a Tribal Government Official (CR-15-53-GF-BMM – Count III – 18 U.S.C. § 666(a)(2)), and False Claims Act Conspiracy (CR-15-42-GF-BMM – Count I – 18 U.S.C. § 286).

The Presentence Investigation Report (PSR) has calculated a total offense level (TOL) of 24, with a criminal history category (CHC) of I. PSR ¶ 111. The recommended guideline range is 51 to 63 months. PSR ¶ 111.

The United States will file its recommendation under USSG §5K1.1, but will address, to the extent possible, the sentencing arguments and objection that Huston has raised.

## ARGUMENT

**I.  Sentencing Analysis:**

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;
- promote respect for the law;

- provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and,

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; subsection (3) requires the court to consider the kinds of sentences available; subsections (4), (5), and (6) require the Court to consider the sentencing guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims.

## II. 18 U.S.C. § 3553(a)(2)(A) – The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

Respect for the law is critical to the success of the criminal justice system. This respect is provided by ensuring that the sentence reflects the seriousness of the offense, which in turn should provide just punishment for all interests involved.

When referencing the Guidelines, the Court should take considerable stock in the Commission's designation that white collar crime—including theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement—are "serious" offenses. U.S.S.G., Ch. 1, pt. A. The guidelines were created, in part,

because society began "to perceive a leniency in sentencing toward white collar offenders." Peter Fridirici, *Does Economic Crime Pay in Pennsylvania? The Perception of Leniency in Pennsylvania Economic Offender Sentencing*, 45 Vill. L. Rev. 793, 817 (2000). The Commission sought to address this trend, and took those above factors into account when fashioning the advisory guidelines.

### III.  18 U.S.C. § 3553(a)(2)(B) – The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct

Deterrence in white collar cases is critical. Indeed, Congress specifically recognized the importance of such deterrence for these types of cases:

> The second purpose of sentencing is to deter others from committing the offense. This is particularly important in the area of white collar crime. Major white collar criminals often are sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business.

S. Rep. 98-225, 1984 U.S.C.C.A.N. 3182, 3259; *see also id*. at 3289 ("Certainly no correctional aims can be achieved whether the maximum sentence imposable is set at such a low level that it can be regarded merely as a cost of doing business—a cost that may in fact be more than offset by the gain from the illegal method of doing business."); Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005) ("Allowing these offenders to escape imprisonment, however, is inequitable and undercuts the law's deterrent and moral message condemning white-collar crime.").

Moreover, not only are white collar crimes more calculated, as opposed to crimes that arise due to passion or opportunity, but a failure to punish appropriately may actually be seen as a sanction of such conduct, thereby increasing the prevalence of such crimes in the future. On the other hand, sentences that outweigh the benefits of crime ensure that defendants are unable to engage in any cost-benefit analysis in determining whether to commit future offenses. Such crimes are therefore deterred.

### IV. Objection—Offense Involved a Public Official

Huston has objected to the application of USSG §2C1.2(b)(3), which provides as follows:

> If the offense involved an elected public official or *any public official in a high-level decision-making* or sensitive position, increase by 4 levels.

USSG §2C1.2(b)(3) (emphasis added). The guidelines explain that "public official" shall be construed "broadly," and it includes the following:

> An officer or employee or person acting for or on behalf of a state or local government, or any department, agency, or branch of government thereof, in any official function, under or by authority of such department, agency, or branch of government, or a juror.

USSG §2C1.2, *Application Note* 1(C). "High-level decision making" means "a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process." *Id.* at *Application Note* 3(A).

5

Examples of such decision-makers are agency administrators, law enforcement officers, or "any other public official with a similar level of authority." *Id.* at *Application Note* 3(B).

Tim Rosette was the Director of the Roads Branch for the Chippewa Cree Tribe, which is a public official in a high-level decision-making position. PSR ¶ 50. Even the PSR explains the importance of Rosette's position:

> [Huston] was awarded no-bid, sole-source hauling contracts with the Tribe. In exchange for the contracts, [Huston] paid Rosette, as Director of the Roads Branch, cash kick-backs of $100 to $200 on a per truck, per trip basis. The financial records confirm this pattern, showing [Huston's] companies withdrew approximately $238,000 in cash, in close proximity to contract payments.

PSR ¶ 28. This gratuity scheme was possible because of the high-ranking position of Rosette—he had total control over the contracts with the Roads Branch and could award them to whomever he chose. PSR ¶ 31. As the PSR acknowledges, Rosette told investigators that "[w]ithout these bribe payments, neither [Huston] nor Eastlick would have received the contracts with the Tribe." PSR ¶ 31. Huston even referred to Rosette and others of the Chippewa Cree Business Council as "the powers that be or the higher ups." PSR ¶ 29. The four-level enhancement should remain.

//

//

//

6

## V. Sentencing

This sentencing is long overdue. All of the co-defendants have pleaded guilty around Huston. The Court now has the ability to see the full landscape of corruption on the Rocky Boy's Indian Reservation, and Huston's role in those crimes.

Huston and his cohorts engaged in a pay-to-play scheme that drained millions from those who need it most—the people. The type of fraud in this case is particularly alarming. It was calculated. It was cold. It was the cost of doing business, and Huston and others willingly participated in it. Unlike some crimes, this was not a snap judgment, or a simple misstep. Defendants, including Huston, woke up every day, calculating how they could embezzle the next dollar. Punishment in this case is critical.

The citizenry is well-aware of these crimes. Some even spoke out, but were unwilling to reveal their identity:

> This letter is in reference to the recent indictments of people involved in the theft, embezzlement, etc. of federal money from the Rocky Boy's Indian Reservation in Box Elder, MT.
>
> I hope that the indictments continue. A couple people that need to be investigated thoroughly are Shad Huston and James Eastlick . . . . The two are involved with Tony Belcourt and the others that have been indicted. Mr. Huston has two shell consulting firms. . . .
>
> Please continue your investigations into the thefts from Rocky Boy tribes. These two individuals have made comments that they are "above" the others and won't be touched. They have also stated that

they will not be charged with anything because they aren't tribal members and won't be thrown under the bus. . . .

Please take this report very seriously. Even though I will not put my name on it, the information contained in this letter is true and accurate. I am afraid for my family if my identity were revealed. Just keep working, digging and charging. That is all I ask.

Huston will certainly dispute the veracity of the letter, which was already presented at the *Kastigar* hearing. But the important point is that others were aware of the widespread and rampant nature of the fraud. The only way to ensure such corruption is stamped out is to provide punishment that far outweighs the benefits. Huston has already reaped the benefits. Now it is time for the appropriate punishment.

The United States will provide its sentencing recommendation in future pleadings with the Court.

DATED this 8th day of February, 2016.

                                  MICHAEL W. COTTER
                                  United States Attorney

                                  */s/ Ryan G. Weldon*
                                  RYAN G. WE.DON
                                  Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of this memorandum contains 1,691 words.

> MICHAEL W. COTTER
> United States Attorney
>
>
> */s/ Ryan G. Weldon*
> RYAN G. WELDON
> Assistant U.S. Attorney